## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION

In re:  KISMA WILLIAMS REEFE
   aka KISHMA VONETTA REEFE,     Chapter 7
                    Bankr. No. 21-13961-PDR
        Debtor.
_____/
NATIONWIDE JUDGMENT RECOVERY, INC.,  Judge Peter D. Russin

        Plaintiff,       Adversary No.
  v.

KISMA WILLIAMS REEFE
aka KISHMA VONETTA REEFE
aka KISHMA REEFE
aka WQ,
        Defendant.
_____/

### COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

  COMES NOW, Nationwide Judgment Recovery, Inc. ("Nationwide"), the Plaintiff and a creditor in the above styled action, by and through counsel, and pursuant to 11 U.S.C. §§ 523(a)(19) and (a)(2)(A) files this Complaint to Determine Dischargeability of Debt against Defendant Kisma Williams Reefer aka Kishma Vonetta Reefe aka Kishma Reefe aka WQ (the "Defendant") and shows this Court as follows:

### Jurisdiction

  1.  This adversary proceeding is brought in connection with the Defendant's case under Chapter 7, Title 11, Bankruptcy Case Number 21-13961 now pending in this Court. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §157. This is a core proceeding.

  2.  In accordance with Fed. R. Bankr. P. 7008, Nationwide consents to the entry of final orders and judgments by this Court. Venue is proper in this Court pursuant to 28 U.S.C. §1409.

  3.  Nationwide is a creditor of the Debtor.

**Overview**

4.  The relief requested arises out of a Final Judgment entered on August 14, 2017 in *Bell v. Disner*, Case 3:14-cv-00091-GCM (W.D.N.C. 2017), referred to herein as the "Judgment." A true and correct copy of the Judgment is attached hereto as Exhibit "A" and is incorporated herein by reference.

5.  Pursuant to the terms of the Final Judgment, post-judgment interest shall accrue at the rate specified under 28 U.S.C. 1961 from the date of entry until the judgment is paid in full.

6.  The current balance of the Judgment is $77,461.28, which includes interest from the judgment date to the date the Debtor filed her bankruptcy petition.

**Procedural Background of Judgment**

7.  On August 17, 2012, the Securities and Exchange Commission filed an action titled *Securities and Exchange Commission v. Rex Venture Group, LLC d/b/a ZeekRewards.com and Paul Burks*, Civil Action No. 3:12-cv-519 (the "SEC Action"), to shut down a Ponzi and pyramid scheme operated by Rex Venture Group, LLC d/b/a www.ZeekRewards.com in which more than 700,000 participants lost over $700 million dollars.

8.  As a result of the SEC Action and ZeekRewards' violation of federal securities law, on August 17, 2012, the Court appointed Kenneth D. Bell as Receiver of the estate of Rex Venture Group, LLC, d/b/a www.ZeekRewards.com, and authorized him to initiate legal proceedings seeking the avoidance of fraudulent transfers, disgorgement of profits, and any other legal and equitable relief that the Receiver deems necessary to recover RVG's assets for the benefit of the Receivership estate. Matthew E. Orso succeeded Kenneth D. Bell as the Receiver.

9.  The Debtor herein was a Net Winner Class Member in the Ponzi and pyramid scheme operated by Rex Venture Group, LLC d/b/a www.ZeekRewards.com.

10. As a Net Winner Class Member, Debtor received net winnings of $55,149.26 from her participation and recruitment efforts. A true and correct copy of the statement showing the Debtor's payments into the Ponzi scheme and her winnings is attached hereto as Exhibit "B" and is incorporated herein by reference.

11. As a result of the SEC Action, the Receiver filed a clawback action under *Bell v. Disner*, Case 3:14-cv-00091-GCM (W.D.N.C. 2017) to recapture the money paid to the scheme's winners so that it can be returned to the victims. The Complaint asserts claims for violation of the North Carolina Uniform Fraudulent Transfer Act, Common Law Fraudulent Transfer and Constructive Trust as a result of the Ponzi scheme that operated in violation of federal securities law.

12. On June 30, 2016, the Receiver moved for Summary Judgment Against Remaining Named Defendants and Partial Summary Judgment Against the Net Winner Class.

13. On November 29, 2016, the Court granted the Receiver's Motion for Summary Judgment Against Remaining Named Defendants and Partial Summary Judgment Against the Net Winner Class. A true and correct copy of the Order is attached hereto as Exhibit "C."

14. In the Order granting the Receiver's Motion for Summary Judgment Against Remaining Named Defendants and Partial Summary Judgment Against the Net Winner Class, the Court found that ZeekRewards operated as a Ponzi scheme in violation of federal securities law and that the Defendants' transfers in furtherance of the Ponzi scheme were fraudulent as violations of N.C. Gen. Stat. § 39-23.4(a)(1), the North Carolina Uniform Fraudulent Transfer Act ("NCUFTA").

15. In granting the Receiver's Motion for Summary Judgment Against Remaining Named Defendants and Partial Summary Judgment Against the Net Winner Class, the Court found that the intent to defraud can be presumed when transfers are in furtherance of a Ponzi scheme. The "Ponzi scheme presumption" has been long settled in a number of jurisdictions and under an analogous section of the Bankruptcy Code.

16. On June 27, 2017, the Receiver filed a Motion to Enter Final Judgments Against Net Winner Class Members, which was granted by the Court on August 14, 2017.

17. Attached hereto as Exhibit "D" is a copy of the Final Judgment entered on August 14, 2017, along with page 65 in the index of Judgments and Amounts. *See* number 3978 for the specific judgment against the Defendant.

18. On December 17, 2019, Nationwide Judgment Recovery, Inc. was assigned the full portfolio of judgments obtained against more than 6,700 Net Winners who participated and profited from ZeekRewards. Attached hereto as Exhibit "E" is a copy of the Assignment of Judgment.

### COUNT 1:  Relief Under 11 U.S.C. § 523(a)(19)

19. Nationwide incorporates paragraphs 1 – 18 herein.

20. 11 U.S.C. § 523(a)(19) provides that a Chapter 7 discharge does not discharge a debt that is

(A) is for—

> (i) the violation of any of the Federal securities laws (as that term is defined in section 3(a)(47) of the Securities Exchange Act of 1934), any of the State securities laws, or any regulation or order issued under such Federal or State securities laws; or (ii) common law fraud, deceit, or manipulation in connection with the purchase or sale of any security; and

(B) results, before, on, or after the date on which the petition was filed, from—
> (i) any judgment, order, consent order, or decree entered in any Federal or State judicial or administrative proceeding;
> (ii) any settlement agreement entered into by the debtor; or
> (iii) any court or administrative order for any damages, fine, penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost, or other payment owed by the debtor.

21. Thus, 11 U.S.C. § 523(a)(19) precludes dischargeability of a debt if two conditions are met. It must be proven that (1) the debt is for the violation of securities law OR for common law fraud, deceit or manipulation in connection with the purchase or sale of any security, AND (2) the debt must be memorialized in a judicial or administrative order or settlement agreement.

22. As part of her active participation in the ZeekRewards Ponzi scheme, the Defendant received a number of fraudulent transfers that resulted in net winnings of $55,149.26 and being designated as a member of the Net Winner Class.

23. The Order Granting the Receiver's Motion for Summary Judgment Against Remaining Named Defendants and Partial Summary Judgment Against the Net Winner Class, attached hereto as Exhibit "C," found the transfers that occurred as a result of the scheme were fraudulent.

24. The SEC Action that shut down the ZeekRewards Ponzi scheme as violation of federal securities law resulted in the clawback action initiated by the Receiver to recover the fraudulent transfers made as a result of the Net Winners' participation in the scheme.

25. The SEC Action, which gave the Receiver the authority to file the clawback lawsuit, is based upon violations by RVG of federal securities statutes. The District Court had jurisdiction over the clawback lawsuit because it was directly related to the SEC Action.

26. The Final Judgment against the Defendant Debtor, entered in *Bell v. Disner* on August 14, 2017 and attached hereto as Exhibit "A," is a debt owed by the Defendant Debtor for the fraudulent transfers she received as a result of her participation in the ZeekRewards Ponzi scheme.

27. Nationwide is entitled to a judgment against the Debtor pursuant to 11 U.S.C. § 523(a)(19) finding the Final Judgment to be non-dischargeable and authorizing Nationwide to pursue collection of same.

28. In the instant case, it is clear that the judgment held by Nationwide Judgment Recovery, Inc. was a result of the Defendant's fraudulent conduct by her active and knowing participation in a Ponzi scheme that violated federal securities law and precipitated Defendant's bankruptcy filing.

29. The Defendant cannot re-litigate the amounts of the judgment in bankruptcy court. Prior to the entry of the final judgments in *Bell v. Disner*, there was a dispute period that allowed participants to adjust their balances, object to the settlement and judgments, and negotiate settlements with the Receiver. While she could have challenged the proposed amounts of the judgment at that time, Defendant chose to remain silent.

30. It is evident in this matter that both requirements of 11 U.S.C. § 523(a)(19) have been met. The Judgment the Defendant Debtor is attempting to discharge through her bankruptcy clearly resulted from the violation of federal securities law and common law fraud, deceit or manipulation in connection with the purchase or sale of any security. Moreover, this debt is memorialized in the Final Judgment issued against the Debtor in *Bell v. Disner*, attached hereto as Exhibit "A." Therefore, the Judgment should be excepted from discharge.

31. As such, the debt in question should be found nondischargeable pursuant to 11 U.S.C. § 523(a)(19).

32. Therefore, the Defendant Debtor's Judgment, attached hereto as Exhibit "A," should be found nondischargeable pursuant to 11 U.S.C. § 523(a)(19).

### COUNT II: Relief Under 11 U.S.C. § 523(a)(2)(A)

33. Nationwide incorporates paragraphs 1 – 32 herein.

34. 11 U.S.C. § 523(a)(2)(A) provides that a discharge does not discharge an individual debtor from any debt that is

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –
> (A) *false pretenses, a false representation, or actual fraud*, other than a statement respecting the debtor's or an insider's financial condition (emphasis supplied).

35. Therefore, for a debt to be nondischargeable under 11 U.S.C. § 523(a)(2)(A), it needs to be for money obtained by false pretenses, a false representation, or actual fraud.

36. The Bankruptcy Code does not clarify whether fraudulent transfer judgments are included in the definition of "false pretenses," "false representation" or "actual fraud."

37. The Supreme Court recently explained that fraudulent transfers made with wrongful intent constitute "actual fraud," thereby prohibiting discharge in bankruptcy. Husky Int'l Electronics, Inc. v. Ritz, 136 S. Ct. 1581, 1586 (2016).

38. In *Husky*, the Supreme Court was faced with a Circuit split regarding the issue of whether the term "actual fraud" as used in § 523(a)(2)(A) of the Code included fraudulent transfers. Husky Int'l Electronics, Inc., 136 S. Ct. at 1585. Writing for the majority, Justice Sotomayor explained that the term "actual fraud" encompasses "anything that counts as 'fraud' and is done with wrongful intent...." Id. at 1586.

39. The Court further held that "[t]he term 'actual fraud' in § 523(a)(2)(A) encompasses forms of fraud, like fraudulent conveyance schemes, that can be effected *without* a false representation." Id. (emphasis added).

40. The Supreme Court extended its findings to the *recipient* of a fraudulent transfer who also commits fraud and obtains money or assets by mere participation in the fraud. If the recipient of a fraudulent transfer later files for bankruptcy, any debts that can be traced to the fraudulent conveyance will be nondischargeable under § 523(a)(2)(A). Husky International Electronics, Inc., 136 S. Ct. at 1589.

41. By receipt of the fraudulent transfers that resulted in the Final Judgment entered on August 14, 2017 in *Bell v. Disner*, Case 3:14-cv-00091-GCM (W.D.N.C. 2017) in the amount of $74,062.74, attached hereto as Exhibit A, the Defendant Debtor herein committed actual fraud.

42. Because direct proof of intent (*i.e.,* the debtor's state of mind) is nearly impossible to obtain, the creditor may present evidence of the surrounding circumstances from which intent may be inferred.

43.     The Defendant was aware that she was committing a fraudulent act by her active participation in the ZeekRewards scheme. She invested a total of $4,790.87 in the Ponzi scheme and "won" $59,940.13, resulting in net winnings of $55,149.26. *See* Exhibit B, attached hereto.

44.     Defendant's winnings caused her to be designated as a Net Winner, who was sued by the Receiver in a clawback action, and ordered to return her winnings.

45.     The North Carolina Uniform Fraudulent Transfer Act ("NCUFTA"), under which the judgment against the Defendant arises, permits a receiver to avoid a transfer made "with the intent to hinder, delay, or defraud any creditor of the debtor" within four years after the transfer was made. *See* N.C. Gen. Stat. §§ 39-23.4(a)(1) (fraudulent transfers); 39-23.1 (definitions); 39-23.9 (statute of limitations).

46.     Many courts have held that the intent to defraud can be presumed when transfers are in furtherance of a Ponzi scheme.

47.     As stated by the court in granting summary judgment in favor of the Receiver -

> A majority of federal courts have held that proof of operation of a Ponzi scheme is sufficient to establish actual intent to hinder, delay, or defraud creditors to permit avoidance of a fraudulent transfer under section 548(a)(1)(A). *See*, *e.g.*, *Gold v. First Tenn. Bank, N.A. (In re: Taneja)*, No. 10-1225, 2012 Bankr. LEXIS 3554, *13-14 (E.D. Va. Jul. 30, 2012). Transfers in furtherance of a Ponzi scheme "have achieved a special status in fraudulent transfer law" from which intent of actual fraud may be inferred. *In re Cohen*, 199 B.R. 709, 717 (9th Cir. BAP 1996).

*See* Bell v. Disner, 2016 WL 7007522, at *11; *see also* In re Agric. Research and Technology Group, Inc., 916 F.2d 528, 536 (9th Cir. 1990)("[T]he mere existence of a Ponzi scheme, which could be established by circumstantial evidence, has been found to fulfill the requirement of actual intent on the part of the debtor."); In re Taubman, 160 B.R. 964, 983 (Bankr. S.D. Ohio 1993)("It is appropriate to find actual intent from the Debtor's active participation in a Ponzi scheme.").

48.     The standard of proof for determining whether a debt is nondischargeable under 11 U.S.C. §523(a)(2)(A) is by the preponderance of the evidence standard. Grogan v. Garner, 498 U.S.

279, 111 S. Ct. 654, 112 L. Ed. 755 (1991). The U.S. Supreme Court noted that it was "unlikely that Congress, in fashioning the standard of proof that governs the applicability of these provisions, would have favored the interest in giving perpetrators of fraud a fresh start over the interest in protecting victims of fraud." Id., 111 S. Ct. at 659.

49. A debtor should not expect to evade creditors through fraudulent transfers - particularly if the purpose of the transfer was made with the intent to delay, hinder, or defraud creditors.

> In [the fraudulent transfer] case, the fraudulent conduct is not in dishonestly inducing a creditor to extend a debt. It is in the acts of concealment and hindrance. In the fraudulent conveyance context, therefore, the opportunities for a false representation from the debtor to the creditor are limited. The debtor may have the opportunity to put forward a false representation if the creditor inquires into the whereabouts of the debtor's assets, but that could hardly be considered a defining feature of this kind of fraud.

Husky, at 1587.

50. A Ponzi scheme is fraudulent by definition: "a fraudulent investment plan in which the investments of later investors are used to pay earlier investors, giving the appearance that the investments of the initial participants dramatically increase in value in a short amount of time." See https://legal-dictionary.thefreedictionary.com/Ponzi+Scheme.

51. The Defendant Debtor's receipt of fraudulent transfers as a result of her knowing and active participation in the ZeekRewards Ponzi scheme violated the North Carolina Uniform Fraudulent Transfer Act.

52. The Defendant Debtor received transfers as a result of her participation in the ZeekRewards Ponzi scheme with an intent to defraud.

53. The Defendant obtained money through her involvement in an illegal and fraudulent Ponzi scheme. By participating and receiving fraudulent transfers, she was found to have committed actual fraud.

54. Post-*Husky*, a misrepresentation is not required for a fraudulent transfer to rise to the level of "actual fraud." "Because we must give the phrase 'actual fraud' in § 523(a)(2)(A) the meaning it has long held, we interpret 'actual fraud' to encompass fraudulent conveyance schemes, even when those schemes do not involve a false representation." Id. at 1590.

> Even though the transferor of a fraudulent conveyance does not obtain assets or debts through the fraudulent conveyance, the transferee - who, with the requisite intent, also commits fraud - does. At minimum, those debts would not be dischargeable under § 523(a)(2)(A).

Husky, at 1584.

55. As such, the debt in question, obtained by actual fraud, should be found nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

56. Therefore, the Defendant Debtor's Judgment, attached hereto as Exhibit "A," should be found nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

WHEREFORE, Nationwide Judgment Recovery, Inc. prays as follows:

(a) That the debt represented by the Defendant's Judgment be determined to be non-dischargeable pursuant to 11 U.S.C. § 523(a)(19); and

(b) That the debt represented by the Defendant's Judgment be determined to be nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A); and

(c) For any other such relief as the Court may deem appropriate.

RESPECTFULLY SUBMITTED this 1st day of August, 2021.

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida, and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

**I HEREBY CERTIFY** that a true and correct copy of the foregoing Complaint to Determine Dischargeability of Debt was served by email and CM/ECF protocol this 1st day of August, 2021 upon: **Elias Leonard Dsouza, Esquire**, 8751 W. Broward Blvd #301, Plantation, FL 33324, and by CM/ECF protocol upon **Sonya Salkin Slott, Chapter 7 Trustee**, PO Box 15580, Plantation, FL 33318.

RESPECTFULLY SUBMITTED this 1st day of August, 2021.

Respectfully submitted,
SANDLER & SANDLER
By M. L. Sandler, P.A.
3390 Mary Street
Suite 116
Miami, FL 33133
Tel: 305-379-6655
Email: martin@sandler-sandler.com

*/s Martin L. Sandler*
Martin L. Sandler, Esquire
Florida Bar No. 0070370

Dated: July 31, 2021

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida, and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

**I HEREBY CERTIFY** that a true and correct copy of the foregoing Complaint to Determine Dischargeability of Debt was served by email and CM/ECF protocol this 1st day of August, 2021 upon: **Elias Leonard Dsouza, Esquire**, 8751 W. Broward Blvd #301, Plantation, FL 33324, and **Sonya Salkin Slott, Chapter 7 Trustee**, PO Box 15580, Plantation, FL 33318.