

**ORDERED in the Southern District of Florida on April 28, 2022.**



**Peter D. Russin, Judge**
**United States Bankruptcy Court**

---

*Tagged Opinion for Print Publication*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION

In re:                                          Case No. 21-13961-PDR

Kishma Reefe,                                   Chapter 7

     Debtor.

_____/

Nationwide Judgment Recovery, Inc.,

     Plaintiff,

v.                                              Adv. Case No. 21-01246-PDR

Kishma Reefe,

     Defendant.

_____/

## ORDER GRANTING DEFENDANT'S MOTION
## TO DISMISS SECOND AMENDED COMPLAINT

The Eleventh Circuit has held that § 523(a)(19) is not dependent on debtor conduct and, consequently, a debt for a securities law violation by a third party is nondischargeable "as long as the securities violation caused the debt." *Lunsford v. Process Tech. Servs., LLC (In re Lunsford)*, 848 F.3d 963, 967–68 (11th Cir. 2017). But does the Eleventh Circuit's holding necessarily encompass all debts that have been touched at some point by a third party's securities law violation? That is the question posed by Defendant in her Motion to Dismiss. For a debt to be "caused by a securities law violation" of a third-party and held non-dischargeable under § 523(a)(19), *Lunsford* requires that the debtor be a party to the decision in which the court enters the judgment against the third-party for the securities law violation. The Defendant is not a party to the applicable judgment here, requiring dismissal of the § 523(a)(19) count.

## <u>Background</u>

The Second Amended Complaint tells an all too familiar story of financial fraud. Paul Burks, the owner and former top executive of Rex Venture Group, LLC ("RVG"), and other management insiders used RVG in their operation of a massive Ponzi and pyramid scheme through ZeekRewards from at least January 2011 until August 2012.[1] Over 700,000 participants lost over $700 million dollars in the scheme.[2] Burks and the management insiders used ZeekRewards to promise substantial

---

[1] (Doc. 20, Ex. 3). Docket entries filed in this adversary proceeding are cited as "(Doc. XX)"; docket entries filed in *In re Kishma Reefe*, No. 21-13961-PDR (Bankr. S.D. Fla.) are cited as "(Main Case Doc. XX)."

[2] (Doc. 20 at 2).

payouts and outsize returns to all participants, but few actually benefitted.[3] Those who did were paid not with profits from a legitimate retail operation, but rather from money paid in by later investors in the scheme. The largest "Net Winners"—those who received more money from ZeekRewards than they paid in—each received well over a million dollars, and many others received hundreds of thousands of dollars.[4]

On August 17, 2012, the Securities and Exchange Commission filed an action, *Securities and Exchange Commission v. Rex Venture Group, LLC d/b/a ZeekRewards.com and Paul Burks* ("SEC Action"),[5] to obtain injunctive and monetary relief against Burks, shut down the ZeekRewards Ponzi and pyramid scheme, freeze RVG's assets, and seek appointment of a Receiver for RVG.[6] That same day, RVG, through Burks, consented to entry of judgment in favor of the SEC. As a result, the court entered consent judgments against RVG and Burks enjoining them from violating the federal securities statutes or participating in, or facilitating, the solicitation of any investment in any security or in the offering of a security. The court also entered an agreed order appointing Kenneth D. Bell as the Receiver over the assets, rights, and all other interests of the estate of RVG d/b/a www.ZeekRewards.com and its subsidiaries.[7] The agreed order authorized and

---

[3] (Doc. 20, Ex. 3).

[4] (Doc. 20, Ex. 3).

[5] *See* (Doc. 20, Exs. 3, 6); *SEC v. Rex Venture Grp. et al.*, No. 3:12-cv-519 (W.D.N.C. Aug. 17, 2012).

[6] (Doc. 20, Ex. 3).

[7] (Doc. 20, Ex. 3).

directed the Receiver to institute legal proceedings seeking the avoidance of fraudulent transfers and any other legal and equitable relief that the Receiver deemed necessary and appropriate to preserve and recover RVG's assets for the benefit of the receivership estate. Defendant was not a party to the SEC Action.

In 2014, the Receiver filed an action to recover money from named and other defendants, including the certified Net Winner Class ("Receiver Action").[8] Defendant is a Net Winner Class Member. In 2016, the court in the Receiver Action granted summary judgment in favor of the Receiver finding that "transfers from the scheme . . . may be avoided" under the North Carolina Uniform Fraudulent Transfer Act (NCUFTA) ("Judgment Opinion").[9] The court deemed the defendants, including Net Winner Class Members, to be "actual participants and investors" in the scheme in the context of addressing the defendants' "reasonably equivalent value" defense, stating:

> . . . [P]articipants and investors in a Ponzi scheme cannot establish that they gave "reasonably equivalent value" for their winnings through their efforts participating in and recruiting others to the scheme. Nearly all the courts that have considered this issue have determined that participants and investors may be entitled to a return of their principal investment, but must return the amount received beyond that investment. *See, e.g., Perkins v. Haines*, 661 F.3d 623, 627 (11th Cir. 2011) ("In the case of Ponzi schemes, the general rule is that a defrauded investor gives 'value' to the Debtor in exchange for a return of the principal amount of the investment, but not as to any payments in excess of principal."); *see also Wing*, 482 F. App'x at 365–66; *In re AFI Holding, Inc.*, 525 F.3d at 704; *Warfield v. Byron*, 436 F.3d 551, 560 (5th Cir. 2006); *Scholes v. Lehmann*, 56 F.3d 750, 757–58 (7th Cir. 1995). The Ninth Circuit has explained one rationale for this rule: "The policy justification is ratable distribution of remaining assets among all the

---

[8] *See* (Doc. 20, Ex. 3); *Bell v. Disner*, No. 3:14-cv-91 (W.D.N.C. Feb. 28, 2014).

[9] (Doc. 20, Ex. 3); *Bell v. Disner*, No. 3:14-cv-91, 2016 WL 7007522, at *11 (W.D.N.C. Nov. 29, 2016).

defrauded investors. The 'winners' in the Ponzi scheme, *even if innocent of any fraud themselves*, should not be permitted to 'enjoy an advantage over later investors sucked into the Ponzi scheme who were not so lucky.'" *Donell v. Kowell*, 533 F.3d 762, 770 (9th Cir. 2008) (quoting *In re United Energy Corp.*, 944 F.2d 589, 596 (9th Cir. 1991)).

(emphasis added).[10] The court did not find that the Net Winner Class Members committed any securities law violation or fraud. In August 2017, the court in the Receiver Action entered a final judgment against Defendant as a Net Winner Class Member for "$74,062.74 which is comprised of $55,149.26 in net winnings from the ZeekRewards scheme and $18,913.48 in prejudgment interest" ("Final Judgment").[11]

Defendant filed a Chapter 7 petition on April 25, 2021, listing Plaintiff[12] in her schedules as holding an unsecured claim of $74,062.74 from the Final Judgment.[13] There was no distribution to creditors in the bankruptcy case and Defendant received a discharge on August 4, 2021.[14]

Before Defendant obtained her discharge, Plaintiff filed this adversary proceeding seeking a determination that the debt from the Final Judgment is nondischargeable under § 523(a)(19) for debts arising from judgments for securities law violations, and § 523(a)(2)(A) for money obtained by fraud. Plaintiff alleges that the Final Judgment "is a debt owed by the Defendant Debtor for the fraudulent

---

[10] (Doc. 20, Ex. 3, at 23).

[11] (Doc. 20, Exs. 1, 4).

[12] Plaintiff received an assignment of the Final Judgment on December 17, 2019, along with the full portfolio of judgments obtained against other Net Winners. (Doc. 20 at 4).

[13] (Main case Doc. 1 at 21).

[14] (Main case Doc. 22).

transfers she received as a result of her participation in the ZeekRewards Ponzi scheme."[15] Defendant moved for dismissal of the previous complaint, which the Court granted because it failed to satisfy the heightened pleading standard for fraud and gave Plaintiff leave to amend.[16] Plaintiff amended the complaint ("Second Amended Complaint"), and Defendant filed the Motion to Dismiss. For the following reasons, the Motion is granted.

## Jurisdiction

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(b). The Court has statutory authority to hear and determine this case under 28 U.S.C. §157(b)(2)(I) and the general order of reference from the United States District Court for the Southern District of Florida. S.D. Fla. Local Rule 87.2(a). Venue is proper under 28 U.S.C. § 1409.

## Legal Standard

Fed. R. Bankr. P. 7012 applies Fed. R. Civ. P. 12 to adversary proceedings. Motions under Rule 12(b)(6) are designed to test the legal sufficiency of the complaint. *See GSW, Inc. v. Long Cty.*, 999 F.2d 1508, 1510 (11th Cir. 1993). When deciding a motion under Rule 12(b)(6), the Court must treat all well-pleaded facts as true and interpret all facts in the light most favorable to the plaintiff. *See Ortiz v. Deutsche Bank AG (In re Estrategias en Valores, S.A.)*, 628 B.R. 722, 726 n.1 (Bankr. S.D. Fla. 2021) (citing *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1321–22 (11th Cir. 2012)). "To

---

[15] (Doc. 20).

[16] (Doc. 17).

survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In general, to state a claim, an adversary complaint must satisfy Fed. R. Bankr. P. 7008, which applies Fed. R. Civ. P. 8. Under Rule 8(a)(2), a claim for relief must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Where the adversary complaint asserts a claim for fraud or mistake, however, the allegations must satisfy the heightened pleading standard under Fed. R. Bankr. P. 7009, which applies Fed. R. Civ. P. 9.[17] Under Rule 9(b), allegations must "state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). To satisfy the heightened pleading standard of Rule 9, the complaint must provide at least "some indicia of reliability" to support the fraud allegations, which may be accomplished by pleading "facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them." *United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1310–11 (11th Cir. 2002); *see also FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1296

---

[17] The requirements of Rule 9(b) serve "an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (cleaned up).

(11th Cir. 2011). In short, "to survive a motion to dismiss, Plaintiffs must assert the who, what, when, and where of the purported fraud." *Cox-Tanner v. Taylor, Bean, & Whitaker Mortg. Corp. (In re Taylor, Bean, & Whitaker Mortg. Corp.)*, No. 3:09-BK-7047-JAF, 2011 WL 5245420, at *5 (Bankr. M.D. Fla. 2011).

<u>Analysis</u>

Plaintiff seeks relief under two possible theories. Count I seeks relief under 11 U.S.C. § 523(a)(19), which excepts from discharge certain debts resulting from securities law violations or fraud in the sale or purchase of securities. Count II seeks relief under 11 U.S.C. § 523(a)(2)(A), which excepts from discharge debts "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud." Defendant contends that the Second Amended Complaint should be dismissed because Plaintiff fails to allege that Defendant violated any securities laws or committed common law fraud and Count II is a shotgun pleading.

## I.    Count I: 11 U.S.C. § 523(a)(19).

A discharge does not discharge an individual debtor from any debt:

(19) that –

(A)    is for –

> (i)    the violation of any of the Federal securities laws (as that term is defined in section 3(a)(47) of the Securities Exchange Act of 1934), any of the State securities laws, or any regulation or order issued under such Federal or State securities laws; or

> (ii)    common law fraud, deceit, or manipulation in connection with the purchase or sale of any security; and

(B)    results, before, on, or after the date on which the petition was filed, from –

    (i)    any judgment, order, consent order, or decree entered in any Federal or State judicial or administrative proceeding;

    (ii)    any settlement agreement entered into by the debtor; or

    (iii)    any court or administrative order for any damages, fine, penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost, or other payment owed by the debtor.

11 U.S.C. § 523(a)(19); *see Allen v. Loughery (In re Loughery)*, 457 B.R. 904, 907 (Bankr. N.D. Ga. 2011). Defendant argues the Second Amended Complaint fails to state a claim under § 523(a)(19) because the judgment that Plaintiff relies on to satisfy § 523(a)(19)(B) does not satisfy either provision of § 523(a)(19)(A) because it makes no finding that Defendant violated securities laws or committed common law fraud in connection with the purchase or sale of securities.

Although the Second Amended Complaint alleges that Defendant's participation in the scheme facilitated the violation of securities laws by third parties and the Final Judgment resulted from the violation of securities laws, it does not allege that Defendant herself violated any securities laws.[18] Neither did the Judgment Opinion in the Receiver Action find that Defendant, individually, violated any securities laws. The Final Judgment is instead for the avoidance of fraudulent transfers to Defendant. The determinations of securities law violations were made in the SEC Action in which the Defendant was not a party and was wholly uninvolved.

---

[18] (Doc. 20 at 79–80).

So, the Second Amended Complaint relies on the fact that the Final Judgment resulted from a violation of securities laws by a third party and that Defendant is said to have "participated" in the scheme that facilitated those violations. However, the Judgment Opinion noted this participation solely in the context of the discussion of whether there was a "reasonably equivalent value" defense to the finding of fraudulent transfers, not in finding that Defendant had also committed securities law violations or fraud. In fact, the discussion surrounding the issue suggests that Defendant could be "innocent of any fraud."[19]

Plaintiff cites *Lunsford* for the proposition that § 523(a)(19) does not require Defendant herself to have violated securities laws because a debt for a securities law violation by a third party is nondischargeable "as long as the securities violation caused the debt."[20] Thus, Plaintiff argues, the Second Amended Complaint sufficiently alleges that "Defendant's debt arose from the securities violations or securities fraud of another."[21] While the Eleventh Circuit's alternative holding in *Lunsford* indeed opined that § 523(a)(19)(A) may apply to debts resulting from securities law violations of a third party, it is inapplicable to the facts of this case.[22]

---

[19] (Doc. 20, Ex. 3, at 24).

[20] (Doc. 28 at 6–7 (quoting *Lunsford*, 848 F.3d at 967–68.)).

[21] (Doc. 28 at 6–7).

[22] In *Lunsford*, the state court confirmed an arbitration award and entered a final judgment against the debtor and two other parties. 848 F.3d at 965–69. The creditor then commenced an adversary proceeding in the debtor's bankruptcy case to avoid discharge of the judgment under § 523(a)(19). The bankruptcy court and district court agreed that the arbitrator had found that the debtor violated securities laws and the debt would not be discharged, and the debtor appealed. The Eleventh Circuit affirmed the decision excepting the debt from discharge, concluding that the bankruptcy court had sufficient reason to determine that the arbitrator made a specific finding that the debtor violated securities laws. The court alternatively held that § 523(a)(19)(A) applies regardless

In *Lunsford*, the Eleventh Circuit held that § 523(a)(19)(A) makes no distinction between the debtor committing the securities law violation and circumstances "when the debtor's liability arises from securities violations committed by a third party." 848 F.3d at 967.[23] The court concluded that the "text and structure of section 523(a)(19)(A) unambiguously prevent discharge of debts 'for the violation' of securities laws irrespective of debtor conduct." *Id.* at 967–68. The Eleventh Circuit explained that the term "for" denotes causation so the phrase 'debt for' "refers to debt caused by a violation of securities laws" without restriction to "subsets of causation." *Id.* In support of its statutory interpretation, the court noted that Congress did not limit § 523(a)(19) based on debtor conduct as it has with other provisions in the statute and the same section of the Bankruptcy Code. *Id.*

However, the Eleventh Circuit also distinguished its holding from a Tenth Circuit case. *Id.* at 968–69 (distinguishing *Okla. Dep't of Sec. v. Wilcox*, 691 F.3d 1171, 1176 (10th Cir. 2012)). In *Wilcox*, the Tenth Circuit concluded that a state court

---

of whether the debtor or a third party violated securities laws so long as the judgment is "for" a violation of securities law. *See Alvarez Perez v. Sanford–Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1164 (11th Cir. 2008) ("[A]lternative holdings are binding precedent"). However, *Lunsford* is careful to distinguish at least one situation in which a third-party violation of securities laws did not fall within § 523(a)(19), as discussed herein.

[23] The Eleventh Circuit disagreed with the Tenth and Ninth Circuits on whether a debt resulting from a third-party's violation of securities laws may be excepted from discharge under § 523(a)(19). *See Oklahoma Dep't of Sec. v. Wilcox*, 691 F.3d 1171, 1176-77 (10th Cir. 2012); *Sherman v. Sec. and Exch. Comm'n (In Re Sherman)*, 658 F.3d 1009, 1012 (9th Cir. 2011). Courts in other circuits dealing with judgments against ZeekRewards participants and the same set of facts as in this case have agreed with the Tenth and Ninth Circuits that § 523(a)(19) only excepts debts for the debtor's own securities violations. *See Nationwide Judgment Recovery, Inc. v. Holtz (In re Holtz)*, No. 20-01043, 2021 WL 5596413, at *5 (Bankr. S.D. Ohio Nov. 17, 2021) (citing *Uren v. Schuholz (In re Schuholz)*, No. 18-13108, 2019 WL 11639553, at *7 (Bankr. S.D. Ohio Oct. 18, 2019) (discussing circuit split)); *National Judgment Recovery Inc. v. Simons (In re Simons)*, No. 21-04027, 2021 WL 5225940, at *5 (Bankr. D. Minn. Nov. 9, 2021); *Nationwide Judgment Recovery, Inc. v. Geredine (In re Geredine)*, 632 B.R. 502, 505 (Bankr. E.D. Mich. 2021).

judgment for unjust enrichment against investors in a Ponzi scheme could be discharged

> because "[t]he judgments at issue [we]re not 'for a violation' of securities laws but for unjust enrichment resulting from someone else's violation of those statutes." In contrast, Lunsford's debt d[id] not arise from a judgment against him for unjust enrichment. Lunsford was a party to the same decision in which the state court entered a judgment against [the third-party] for a violation of securities laws.

*Id.* (quoting *Wilcox*, 691 F.3d at 1173, 1175). The Eleventh Circuit therefore concluded that the *Wilcox* "decision involved circumstances inapplicable" to *Lunsford*. *Id.* Based on that distinction, for a debt to be "caused by a securities law violation" of a third-party and be held non-dischargeable under § 523(a)(19), *Lunsford* requires that the debtor be a party to the decision in which the court enters the judgment against the third-party for the securities law violation.

The facts and circumstances of this adversary resemble those in *Wilcox*. *See Wilcox*, 691 F.3d at 1173. In *Wilcox*, the debtors were investors in the Ponzi scheme but never prosecuted for securities law violations. Instead, separate actions were filed against the Ponzi scheme investors that had profited, to recoup funds on the grounds of unjust enrichment, fraudulent transfer, and equitable lien. After the state court in the action against the debtors granted summary judgment requiring the debtors to repay their profits from the scheme, they filed for bankruptcy. The adverse party then initiated a proceeding to avoid discharge of the judgment debt arguing that "the state court judgment [was] 'for the violation' of securities laws because the disgorgement was a direct result of [another]'s violation of securities laws and because the Debtors materially aided in the violation." *Id.* at 1174.

Like in *Lunsford*, the debt in *Wilcox* to some extent arose out of or was touched by someone else's securities law violations. The critical distinction however is that the Eleventh Circuit found causation in *Lunsford* because the third party was adjudged to have violated securities laws in litigation involving the debtor. In *Wilcox*, the third party was adjudged to have violated securities laws in litigation not involving the debtor. While the judgment in *Wilcox* may have led to related but separate litigation against the debtor for claims other than securities law violations, unlike the facts in *Lunsford*, the debtor was not a party to the securities law violation judgment—a distinction the Eleventh Circuit found made *Wilcox* inapplicable. [24]

In striking similarity to the facts in *Wilcox*, the Defendant here was not a party in the SEC Action in which the court entered the judgment against the third parties for the securities law violations. The Eleventh Circuit's determination that *Wilcox* is inapplicable to its holding in *Lunsford* leads the Court to the inescapable conclusion

---

[24] The *Lunsford* concurrence points out the possible confusion that this distinction creates:

[U]nder the Majority's reasoning, though the judgments that were the cause of the debts at issue in *Wilcox* were for unjust enrichment, they nonetheless also seem to be "debt as a result of" a securities-fraud violation and therefore non-dischargeable under § 523(a)(19)(A). Yet the panel suggests that § 523(a)(19)(A)'s preclusion did not apply to the *Wilcox* investors' situation because "'[t]he judgments at issue [in *Wilcox*] [we]re not "for a violation" of securities laws but for unjust enrichment resulting from someone else's violation of those statutes.'" This internal inconsistency in the panel's reasoning will no doubt create confusion about how courts and litigants in this Circuit are to construe and apply our alternative holding.

848 F.3d at 970. As the concurrence notes, it is possible that the *Lunsford* holding's distinction of *Wilcox* ultimately rests on the fact that the judgment against the debtor for unjust enrichment in *Wilcox* "was not, in name, a judgment for securities violations" and the debtor was not a party to the litigation resulting in the judgment against third parties for securities law violations. *Id.*

that the Eleventh Circuit would similarly find *Lunsford* inapplicable to this case, therefore rendering § 523(a)(19) inapplicable.

Plaintiff also alleges that Defendant "committed common law fraud, deceit and manipulation in connection with the purchase and sale of any security by managing a portfolio of fake ZeekRewards accounts that she collected funds from."[25] However, even if the Second Amended complaint sufficiently alleged that the debt is for fraud under § 523(19)(A)(ii), the debt would still need to result from a judgment for fraud in the sale or purchase of securities. Although the court in the Receiver Action found that the transfers from which Defendant received her winnings from the Ponzi scheme were fraudulent transfers under the NCUFTA and deemed Defendant and other Net Winners to be actual participants and investors in the scheme in the context of their "reasonably equivalent value" defense, it did not attribute any fraudulent intent or conduct to them much less in relation to the sale and purchase of securities. *See In re Simons*, 2021 WL 5225940, at *8 (finding in a case also dealing with a SeekRewards Net Winner that "[t]he Summary Judgment Order and Final Judgment are based on fraudulent transfers under the NCUFTA and do not indicate that the transfers involved a security or were in connection with the buying or selling of securities" so § 523(a)(19)(A)(ii) did not apply). Plaintiff's argument therefore fails in this regard.

The Court would note that there may be circumstances in which an honest debtor invests unwittingly in what turns out to be a Ponzi scheme and is a "net

---

[25] (Doc. 20 ¶ 63).

winner" resulting in a debt for unjust enrichment, fraudulent conveyance, or some other theory to some extent touched by a securities law violation. The Eleventh Circuit's holding in *Lunsford* may result in § 523(a)(19) casting a wide net that may snare such an honest debtor. Whether Congress intended such a result is not before the Court as the alternative holding in *Lunsford* found the statute unambiguous and is binding.[26] That is not to say the Defendant in this case is such an honest debtor— that is yet to be determined. But as discussed, § 523(a)(19) is not the mechanism by which to make that determination under the facts alleged in the Second Amended Complaint.

The fact that Defendant was not a party to the SEC Action and the findings of the court in the Receiver Action are unalterable. Therefore, the defects in Count I of the Second Amended Complaint are incurable, and the Plaintiff is unable to state a claim under § 523(a)(19). Where "a more carefully drafted complaint could not state a claim," dismissal with prejudice is appropriate. *Ziemba*, 256 F.3d at 1213; *see, e.g.*, *Durango Ga. Paper Co. v. Pension Benefit Guar. Corp. (In re Durango Ga. Paper Co.)*,

---

[26] In *Lunsford*, the Eleventh Circuit addressed its split from the Ninth Circuit's decision in *Sherman*. In *Sherman*, the Ninth Circuit held that 523(a)(19)(A) discharged debts resulting from the debtor's own securities violation. 658 F.3d at 1012. The Eleventh Circuit found unpersuasive the Ninth Circuit's reasoning of "further[ing] the supposed 'purpose' of the Bankruptcy Code to allow a 'fresh start' and to protect 'the honest but unfortunate debtor,'" noting the Ninth Circuit "followed prescriptions of general statutory purpose over the text." *Lunsford*, 848 F.3d at 969.

Although this Court is supportive of the general notions expressed in *Sherman* and by other courts, including the Eleventh Circuit, which agree with the general view that the Code intends to provide a fresh start to the "honest but unfortunate debtor" and interpreting the § 523(a) exceptions to discharge narrowly in favor of the debtor's discharge, this Court, as it must, follows the binding precedent of *Lunsford* in its construction of § 523(a)(19)(A). In doing so, the Court's decision is congruent with the Eleventh Circuit's construction and declines to expand *Lunsford* in a way that reads it to impose no limitation on the debtors that can be swept up by the discharge exception because their debt was at some point touched by a violation of securities laws.

539 B.R. 896, 905 (Bankr. S.D. Ga. 2015). Count I is therefore dismissed with prejudice.

## II.   Count II: 11 U.S.C. § 523(a)(2)(A).

Section 523(a)(2)(A) excepts from discharge any debt "for money, property, services . . . obtained by false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A). To state a claim under § 523(a)(2)(A), Plaintiff must plead that Defendant "made a false statement with the purpose and intention of deceiving the creditor; the creditor relied on such false statement; the creditor's reliance on the false statement was justifiably founded; and the creditor sustained damage as a result of the false statement." *Fuller v. Johannessen (In re Johannessen)*, 76 F.3d 347, 350 (11th Cir. 1996).

Plaintiff alleges that Defendant committed actual fraud through her active participation in the ZeekRewards scheme, such as by "managing a portfolio of fake ZeekRewards accounts that she collected the funds from."[27] Plaintiff argues Count II therefore states a cause of action and relies on *Husky Intern. Elecs., Inc. v. Ritz*, 578 U.S. 356 (2016), in which the Supreme Court held that "[t]he term 'actual fraud' in §523(a)(2)(A) encompasses forms of fraud, like fraudulent conveyance schemes, that can be effected without a false representation." *Id.* at 359. The Supreme Court also ruled that the recipient of a fraudulent transfer can, with the requisite intent, also commit fraud. *Id.* at 365. When that recipient obtains assets by his or her participation in the fraud and later files for bankruptcy, "any debts 'traceable to' the

---

[27] (Doc. 20 ¶ 92).

fraudulent conveyance will be nondischargable under § 523(a)(2)(A)." *Id.* (internal citations omitted). Plaintiff alleges that based on the findings in the Judgment Opinion, Defendant received fraudulent transfers and participated in the scheme so under *Husky* the debt from the Final Judgment should be nondischargeable under § 523(a)(2)(A).

Defendant was found in the Judgment Opinion to have received fraudulent transfers. The court determined that "the intent to defraud can be presumed when transfers are in furtherance of a Ponzi scheme" so "the law considers transfers from the scheme to be fraudulent transfers that may be avoided under the NCUFTA."[28] The fact that Plaintiff was a recipient of the fraudulent transfers, though, is not enough under *Husky*—Defendant must also have committed fraud with the requisite fraudulent intent. Although noting actual investment and participation in the scheme, the Judgment Opinion did not find Defendant committed fraud nor acted with fraudulent intent, so Plaintiff cannot rely on the Judgment Opinion alone to establish the *Husky* elements. Plaintiff must also allege that Defendant committed fraud and acted with fraudulent intent in her participation in the Ponzi scheme. *See In re Holtz*, 2021 WL 5596413, at *8 ("Unlike § 523(a)(19), § 523(a)(2)(A) does not carry a requirement that the judgment be based on a 'memorialized order' from another court, so the [Judgment] Opinion's deficiency is not lethal to the Plaintiff's claim under that section."); *In re Schuholz*, 2019 WL 11639553, at *1 ("[W]hile the State court did not make specific findings that would establish certain elements

---

[28] (Doc. 20, Ex. 3, at 22).

required to find the debt nondischargeable under § 523(a)(2)(A) . . . the lack of such findings does not preclude this Court from making its own determination of those issues at trial.").

The Second Amended Complaint makes additional allegations supporting fraud beyond the findings of the Judgment Opinion. For instance, Plaintiff alleges that between 2008 and 2012, Defendant opened ZeekRewards accounts for her infant children and "created puppet accounts and recruited unsuspecting victims into the scheme" to increase her own payout, and then "collected the commission payments by forging signatures on the checks."[29] Because these allegations meet the heightened pleading requirements under Rule 9, Count II sufficiently states a claim under § 523(a)(2)(A).

Defendant argues that this count is a "shotgun pleading" because it "incorporates by reference the entirety of the preceding 82 paragraphs" of the Second Amended Complaint.[30] Although the first paragraph under Count II does incorporate all preceding paragraphs, the Second Amended Complaint specifically points to paragraphs 29 through 69 as support for Count II after that first paragraph. It also makes specific factual allegations throughout Count II that make clear the allegations it is relying on to support Count II. As Plaintiff argued when Defendant raised this issue at the hearing, it is clear what allegations apply to Count II, which is therefore answerable even if it is arguably a shotgun pleading that mistakenly

---

[29] (Doc. 20 ¶¶ 49–53, 64–67, 95–98, 109).

[30] (Doc. 21 ¶ 1).

incorporates the previous count. Therefore, the Court will allow Plaintiff one final opportunity to amend Count II to remove any style of shotgun pleading.

Accordingly, the Court **ORDERS**:

1.      The Motion to Dismiss (Doc. 21) is **GRANTED**.

2.      Count I of the Second Amended Complaint (Doc. 20) is **DISMISSED** with prejudice.

3.      Count II is **DISMISSED** without prejudice.

4.      Plaintiff has 14 days from the date of this order to amend Count II as directed.

5.      Defendant shall have 14 days thereafter to respond to the third amended complaint.

# # #

Copies To:
Kevin C. Gleason

*Attorney Kevin C. Gleason is directed to serve a copy of this Order on all interested parties.*